# Megraw, Appellant, *v.* Hamilton Trust Company.

*Contracts—Construction—Breach—Damages—Evidence.*

An agreement by a trust company, holding mortgages on certain vacant lots, with a tiling company, that the equity of redemption in one of such lots, which was also controlled by the trust company, should be security for indebtedness to be incurred by a contractor who was to build houses on the lots for necessary tiling, and that should the contractor fail to pay such indebtedness, the trust company would convey or mortgage such lot to the tiling company, or would pay its bill from the proceeds of the sale thereof, contemplated that the lot would be improved and that the tiling company would derive benefit from such improvement, especially as the equity of redemption was worthless while the lot was unimproved because of heavy encumbrances thereon, and the default of the contractor while the lot was unimproved did not deprive the tiling company of possible advantages in case of the

lot's improvement, but merely fixed the amount of its claim against the lot. In an action of assumpsit by the tiling company to recover damages for the failure of the trust company to perform its agreement, the court erred in excluding evidence of the increase in value of the lot after the contractor's default, due to the construction of a house thereon by defendant, which was offered for the purpose of showing the extent of plaintiff's damages.

Argued April 3, 1913. Appeal, No. 98, Jan. T., 1913, by plaintiffs, from judgment of C. P. No. 4, Dec. T., 1908, No. 5100, on directed verdict for defendant in case of Mary H. Megraw and Joseph R. Livezey, Executors under the will of John Megraw, deceased, and James C. Megraw, who was late trading with John Megraw, as Standard Tile Company, *v.* Hamilton Trust Company. Before BROWN, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit for breach of contract. Before CARR, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court, and judgment thereon. Plaintiffs appealed.

*Errors assigned* were in excluding certain evidence, and in directing a verdict for defendant.

*E. Spencer Miller,* for appellants.

*M. Hampton Todd,* for appellee.

OPINION BY MR. JUSTICE STEWART, June 27, 1913:

One C. M. McFadden, a building contractor, had undertaken to erect twelve dwellings answering a certain description, upon a lot of ground owned by Richard McDugall within the limits of the City of Philadelphia. With the details of the agreement between these parties we are not at present concerned. The Standard Tile Company, whose representatives are here appellants, proposed to McFadden to furnish and put in place for

a given sum the tile required under the specifications in the erection and completion of these twelve dwellings. At this time the title to the lot had passed from Mc-Dugall to one Lilly, who in furtherance of the general design had divided the lot into twelve separate lots to accommodate the dwellings to be erected, and had created twelve mortgages, one on each lot, and each in the sum of $8,000, and in addition a general mortgage covering all the property in the sum of $15,000, all in favor of McDugall. Lilly then conveyed the lot subject to these mortgages to W. Sherwood Crowl, and Mc-Dugall assigned all the mortgages to the Hamilton Trust Company. Crowl's appearance in the transaction is explained by the appellee, defendant below, as follows:

"Crowl holds title to said premises, houses and lots of ground, in trust for the use and benefit of the Hamilton Trust Company, to sell the same and pay and apply the proceeds derived from such sale to said Hamilton Trust Company to reimburse said company for any and all loss, damage or expenses which it has been put to or has sustained, or may be put to or sustain by reason of having made advances of money on account of said operation, or guarantees the erection and completion of said houses," etc.

Thus we have disclosed not only Crowl's position in the case but the interest of the Hamilton Trust Company in the enterprise as well. The proposal of the Standard Tile Company with respect to the furnishing and placing of the tile required in the construction of the houses having been approved, in order to induce the tile company to enter upon the work, the Hamilton Trust Company executed and delivered the following declaration under date of 2 March, 1907:

"PHILADELPHIA, 2d March, 1907.

"STANDARD TILE COMPANY, Land Title Bldg., Philadelphia:

"*Gentlemen:* W. Sherwood Crowl, of the City of

Philadelphia, holds title to premises 4520 Walnut street, Philadelphia, and C. F. McFadden has arranged with him that this property shall be security for indebtedness to be incurred by C. F. McFadden, because of the work and materials estimated for by you and accepted by Mr. McFadden. This company will see that this property is made available to you, by payment of your bill out of the proceeds on sale, by conveyance to you, or else by a mortgage in the amount of your bill against Mr. McFadden, if the latter should fail to pay your bill. The property shall not be encumbered beyond the mortgage mentioned by Mr. Crowl in his acknowledgment under date of February 27, 1907, in impairment of the rights you are hereby given against it.

"Yours very truly,

"HAMILTON TRUST CO.,

"WM. R. BRICKER, *Title Officer.*"

McFadden at once entered upon the construction of the buildings and by the fall of 1907 had completed six, when, for some reason not appearing here the operation failed, at least so far as McFadden was concerned. The tile company had furnished the tile for the houses that had been completed, put them in place, and had furnished considerable tile to be used in the uncompleted buildings. When McFadden failed there was due the tile company, according to its claim, $2,792.67, for the material and work furnished. The lot that was to be made available to the tile company as security for its claim remained at this time unimproved, or improved but slightly. McFadden having defaulted in payment to the tile company, the latter, after repeated demands on McFadden, insisted that the trust company should comply with one or other of the alternative stipulations in the declaration above referred to, viz: either pay the claim of the tile company out of the proceeds of the sale of lot No. 4520 Walnut street, or convey the lot to the tile company, or give a mortgage on the lot in the amount of the claim. The trust company not complying

with the demands in any respect, nor offering to do so, on 21 June, 1911, the tile company brought the present action to recover the amount of its claim due from Mc-Fadden and which plaintiffs claimed to have lost by reason of the defendant's default in failing to keep and observe its agreement. Prior to this, however, on 13 July, 1909, the building on lot No. 4520 having been completed, but not by McFadden, the trust company caused a writ of scire facias to issue upon a mortgage for $2,500 which it held against this particular lot No. 4520, and which was an existing encumbrance at the time the tile company accepted the security offered by the trust company. Judgment was duly obtained and by execution thereon the lot was sold at sheriff's sale to one George W. Pierce, for the sum of $100, subject, of course, to the $8,000 mortgage. These are the facts as nearly as we can gather them from a record which is far from satisfactory. On the trial plaintiff offered to show the market value of the lot after the building had been erected thereon and prior to July, 1909. This was objected to on part of the defendant on the ground that, under the declaration of the trust company given to the plaintiff, the only security afforded was the lot in the unimproved condition it was in at that date, or at the time when McFadden ceased work. The learned trial judge sustained the objection and excluded the offer. An exception was taken, and the action of the court is assigned for error. No other evidence as to value was offered. Binding instructions were given in favor of the defendant in this language:

"Therefore, upon the facts it appears that at this date in July, 1907, there was the amount due, according to plaintiff's claim, of over $2,700 to McFadden, and, therefore, if the property 4520 Walnut street was to be available at that time, it must be shown in this case that there was a value to the plaintiff of at least that amount of money, in order that the plaintiff could secure it from these premises. In that respect there has been a

failure of proof, because it has not been shown you that
at the date of July 1, 1907, there was, over and above
the encumbrances on the property at the time, sufficient
in the way of equity, by proceeds of sale, mortgage or
conveyance from which to collect the amount of the
plaintiff's claim.   Therefore, I grant this motion and
direct a verdict for the defendant."

To this action of the court exception was taken and it
is also assigned as error.   The question thus presented
is a very narrow one.   The burden was on the plaintiff
to show actual loss.   Whether or not it sustained such
loss depended on the value to the plaintiff of the security
for which it had contracted.   If in point of fact it af-
forded no security whatever, because existing liens so
far exceeded the value of the lot as to leave no possible
equity remaining, then plaintiff lost nothing by defend-
ant's failure.   But, as of what date was that value to be
determined?   The learned trial judge held that it was to
be determined as of July, 1907, when McFadden aban-
doned his contract for the erection of buildings, owing
the plaintiff $2,792.67, and because it was not shown
that at that date the value of the property exceeded the
amount of the encumbrances thereon he directed a ver-
dict for the defendant.   We fail to see anything in
the contract to warrant this ruling.   When McFad-
den abandoned his contract owing the plaintiff $2,-
792.67, the liability of the trust company on its obliga-
tion of 2 March, 1907, whatever that was, was then
fixed; but it by no means follows from this that the con-
dition of the lot with respect to its improvement at that
time measured the extent of the plaintiff's equity.   The
date when McFadden abandoned the contract is with-
out other significance than determining the amount due
from him to the plaintiff.   The undertaking of the de-
fendant company contemplated the securing of this in-
debtedness to whatever extent the equity in the lot
would accomplish it.   The fact that the liability of the
defendant company was then fixed, had nothing what-

ever to do with determining the measure of the equity plaintiff held as security for the debt. If that equity was growing in value, no duty rested on the plaintiff to expedite its conversion. The trust company being the holder of all the mortgages on the lot had the matter in its own hands; it could have allowed the lot to remain unimproved, or it could then have met its engagements by mortgaging or conveying to the plaintiff. It chose to do neither, but proceeded to erect the building on the lot through another contractor than McFadden, and when completed, the plaintiff not having received a penny of the balance due it from McFadden, and for which the equity was pledged, it foreclosed its mortgage and had the property sold by the sheriff for a consideration of one hundred dollars subject to the $8,000 mortgage, thus finally and forever putting it out of its power to perform its agreement by observing either one of its alternative stipulations. The offer by the plaintiff was to show the value of the lot when improved immediately prior to this sale. The ruling of the court was that value could be shown only as of July, 1907, when the lot was unimproved, and binding instructions for the defendant followed upon this ruling. It is a circumstance calling for remark that there is nothing in this record which shows when the building on the lot was completed. There is warrant for assuming that it was completed as early as midsummer of 1908; but this date is too important to be left in uncertainty. We shall, however, from all the light we have, assume it to be as we have stated; if a mistake, it may be corrected on another trial which cannot be avoided. We then have this fact, in August, 1908, the plaintiff made written demand on the defendant company, on threat of suit, that it keep its agreement of 2 March, 1907, by observing one or other of the alternative stipulations therein with respect to the lot, McFadden having failed to pay. To this there was a written reply which bases the company's refusal to comply solely on the ground that the

company had been advised by McFadden that the claim of plaintiff against him was contested, and that he, McFadden, had notified the company not to mortgage or transfer the property. If the building on the lot was then completed, how could it be said that the conveyance or mortgage which plaintiff demanded, and which was denied solely because of McFadden's notice, was without value? And, in view of the specific objection made by the defendant, how can it be said that within their own understanding of their covenants the plaintiff's security was limited to the unimproved lot? In the spring following the property sold for one hundred dollars subject to the $8,000 mortgage, thus showing that it had at least some value that could have been available for plaintiff's security. The amount is unimportant. It is, we think, quite evident from all the circumstances in the case that it was within the understanding of both parties that the contract of 2 March, 1907, had regard to the lot with the improvements thereon completed, no matter by what contractor. A vacant lot encumbered to an extent equal to the cost of proposed improvements, and for the purpose of accomplishing these proposed improvements, would hardly be regarded as a security for anything except as the improvements were made. Be this as it may, what we now decide is that it was error to hold that because the evidence did not show that in July, 1906, when McFadden failed in his contract, the lot had value over and above the encumbrances that were upon it, the plaintiff was not entitled as matter of law to recover.

The assignment of error which complains of the binding instructions for the defendant is sustained, and judgment is reversed, and a venire facias de novo awarded.